UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALBERT LOCKRIDGE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 4:06CV01644 ERW |
| | ) |
| HBE CORPORATION, | ) |
| d/b/a ADAM'S MARK HOTEL, | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM AND ORDER

This matter comes before the Court on Seven-Seventeen HB St. Louis Redevelopment Corporation's ("Defendant" or "hotel") Motion for Summary Judgment [doc. #34].

Albert Lockridge ("Plaintiff") has brought a six-count complaint against Defendant, in which he alleges that he was denied a promotion on the basis of his race, that he was discharged because of his race, and that he was retaliated against for making complaints of racial discrimination. Plaintiff seeks to recover under both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 for each theory of discrimination he alleges.

## I.    BACKGROUND FACTS[1]

The Court begins by noting that the Local Rules specifically require "specific references to portions of the record, where available, upon which the opposing party relies." Local Rule 7-4.01(E). Local rules such as this are implemented in order to prevent district courts from having to "scour the record looking for factual disputes." *Northwest Bank and Trust Co. v. First Illinois Nat'l. Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

---

[1] The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts and Plaintiff's Response to Defendant's Statement of Material Facts.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Most of the statements in Plaintiff's response do not include specific references to portions of the record as is required under the local rules. Several statements merely say "Deny" without any supporting citations. Other responses are "short unsubstantiated phrases" such as "Mr. Lockridge denies that he made no implication that race was a factor in his non-selection." *See Libel v. Adventure Lands of America, Inc.*, 482 F.3d 1028, 1032 (8th Cir. 2007). The Eighth Circuit has held that a district court does not abuse its discretion when it deems admitted those statements of undisputed facts that violate the local rules. *Id.* at 1033. Accordingly, all statements of fact that are not supported by citations to the record will be considered admitted for the purposes of the pending motion. The only material facts that Plaintiff has specifically controverted with an appropriate citation to the record are contained in paragraphs 20 and 32.

Defendant hired Plaintiff to work in the Building Services Department at the Adam's Mark Hotel on March 13, 1998. Plaintiff worked in this department through the course of his employment. Near the end of his employment with the hotel, Plaintiff was on FMLA leave due to a back injury. He submitted a request for light duty work to Tom Cole, the Director of Personnel. This request was denied as Defendant's policy was not to allow employees to perform light duty work when their injury or illness had not been incurred on the job. In his deposition, Plaintiff stated that he believed his injury had been incurred on the job, however, this information was not communicated to Tom Cole when his request for light duty work was made, or when he told hotel management that he needed time off under the Family Medical Leave Act.

Plaintiff sent a letter to Defendant dated September 22, 2006, which included many complaints against the hotel and hotel management. In his letter, Plaintiff complained of:

- Sewer backups in the kitchen
- Improper curing of the paint in the hotel's pools and hot tub
- Elevator repairs being performed by unqualified Building Services employees

2

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

- "Hundreds of five-gallon plastic paint buckets and other containers wired-up in the ceilings to catch rain water" from what Plaintiff alleged was a leaky roof
- Not being allowed to work on the Renovation Services Crew without losing his position in the Building Services Department
- The employment of a non-certified electrician on the renovation project
- The denial of Plaintiff's proposal for a photo shop business at the hotel
- His vacation being adversely affected and his off days changed
- Not being selected to serve on the hotel's CARE team
- The hotel's requirement that employee's be dressed in their work uniform when they clock-in and clock-out for their shifts
- Racially insensitive letter sent by the general manager to hotel guests during the Gateway Football Classic in 2005

This letter was also sent to the media, city officials, senators, congressmen, and others.

The facts show that Plaintiff's complaints of sewer backups, improper paint curing in the pools and hot tub, elevator repairs, the denial of his photo shop proposal, and the racist letter all involve incidents that had happened at least a year prior to the letter's date. Additionally, Eric Walters contends that Plaintiff's complaint about buckets catching rain water was completely false, and that the pictures submitted with the letter were either from years before or a different facility. Eric Walters[2] concluded that most of the complaints in the letter were exaggerated and involved problems that had already been resolved, or which occurred so long in the past that no resolution was possible.

Plaintiff admitted that the majority of his complaints in his letter had nothing to do with race. The only complaints in Plaintiff's letter that are employment complaints involving Plaintiff's race are his allegation that his proposal for a photo shop business was denied due to his race, and his allegation that he was not selected for the CARE team due to his race.

---

[2] Eric Walters was the General Manager of the Adam's Mark Hotel at the time Plaintiff was discharged.

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The implementation of Plaintiff's photo shop proposal would have cost the hotel approximately $342,000 annually, and was rejected by David Trudnak[3] because he believed the hotel's resources were too limited to undertake this project while the hotel was undergoing a $10 million revitalization project.

Plaintiff applied for, but was not selected to be a member of the CARE Team. The CARE Team was established in November, 2004 for the purpose of addressing employee concerns and making suggestions as to how to improve hotel operations, and was disbanded in approximately May, 2005. Many employees requested to be on the CARE Team, and Defendant stated that CARE Team membership was selected at random. No financial benefit was given to members of the CARE Team. Plaintiff admitted that African-Americans were selected to serve on the CARE Team.

Plaintiff was fired on October 2, 2006 by Eric Walters. Eric Walters states that he terminated Plaintiff's employment because Plaintiff was displaying an attitude of dissatisfaction and ongoing discontent which he felt was inconsistent with and destructive of the environment of hospitality at the hotel. Since many of Plaintiff's complaints concerned events that occurred far in the past, Eric Walters concluded that Plaintiff could not be satisfied and would always be disgruntled over these events. Eric Walters states that his decision to terminate Plaintiff's employment was not based on race, but instead was based on his bad attitude as evidenced in the September 22, 2006 letter.

## II. LEGAL STANDARD

---

[3] David Trudnak was the General Manager of the hotel at the time Plaintiff submitted his proposal, and was replaced by Eric Walters who held the position of General Manager from June through October of 2006.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has noted that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (*quoting* Fed. R. Civ. P. 1). "By its very terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. Further, if the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish "the non-existence of any genuine issue of fact that is material to a judgment in his favor." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S.

5

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

at 256-57. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 334. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.*, 210 F.3d 845, 847 (8th Cir. 2000). The Court instead "perform[s] only a gatekeeper function of determining whether there is evidence in the summary judgment record generating a genuine issue of material fact for trial on each essential element of a claim." *Id.*

## III. DISCUSSION

The Supreme Court in *McDonnell Douglas Corp. v. Green*, set forth the burden-shifting approach which is used in analyzing claims of intentional discrimination under Title VII. 411 U.S. 792, 802 (1973). Under this approach a plaintiff has the initial burden of establishing a *prima facie* case of discrimination. Once a plaintiff has done so, the burden then shifts to the employer to articulate a nondiscriminatory reason for the employment action, which, if accomplished, the plaintiff then must show the proffered reason is pretextual. *Id.* at 802-804; *see also Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005). A "presumption of discrimination is created

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

when the plaintiff meets [his] burden of establishing a *prima facie* case of employment discrimination." *Rodgers*, 417 F.3d at 850. The Eighth Circuit further emphasizes that "[a] minimal evidentiary showing will satisfy this burden of production." *Id.* The burden then shifts to the employer, and "[i]f the employer meets its burden, 'the presumption of discrimination disappears, requiring the plaintiff to prove that the proffered justification is merely a pretext for discrimination.'" *Id.* (*quoting Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1007 (8th Cir. 2005)).

Plaintiff alleges racial discrimination based on (1) failure to promote, (2) wrongful discharge, and (3) retaliatory discharge. Plaintiff seeks to recover under both Title VII and 42 U.S.C. § 1981 for each of these allegations of racial discrimination. Claims for disparate treatment or retaliation that are brought under Title VII are analyzed "in the same manner" as claims under 42 U.S.C. § 1981. *Davis v. KARK-TV, Inc.*, 421 F.3d 699, 703 (8th Cir. 2005); *Kincaid v. City of Omaha*, 378 F.3d 799, 806 (8th Cir. 2004). Accordingly, the Court will use the steps detailed above to analyze each of Plaintiff's allegations of racial discrimination.

## A. FAILURE TO PROMOTE

### 1. Exhaustion of Administrative Remedies

Prior to filing a lawsuit under Title VII, a Plaintiff is required to exhaust administrative remedies. *See Miles v. Bellfontaine Habilitation Center*, 481 F.3d 1106, 1107 (8th Cir. 2007). The "failure to exhaust administrative remedies is an affirmative defense that a defendant must prove." *Id.* Defendant asks the Court to dismiss Plaintiff's claim under Title VII for failure to promote, asserting that Plaintiff did not exhaust his EEOC administrative remedies for this claim.

Defendant contends that Plaintiff's EEOC charges do not contain allegations remotely concerning the failure to promote. In Plaintiff's first EEOC charge, Plaintiff complained that Defendant discriminated and retaliated against him for signing a letter with other co-workers

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

which complained about working conditions. Plaintiff's EEOC charge also stated that the hotel had changed his work schedule and stated that he believed he had been discriminated against for "complaining about working conditions." Plaintiff's second EEOC charge alleges retaliatory discharge as a result of the filing of his first EEOC charge.

The Court notes that "[t]he permissible scope of an EEOC lawsuit is not confined to the specific allegations in the charge; rather, it may extend to any discrimination like or related to the substance of the allegations in the charge and which reasonably can be expected to grow out of the investigation triggered by the charge." *EEOC v. Delight Wholesale Co.*, 973 F.2d 664, 668 (8th Cir. 1992). However, "[t]he information contained in an EEOC charge must be sufficient to give the employer notice of the subject matter of the charge and identify generally the basis for a claim." *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1123 (8th Cir. 2006). Plaintiff's charge did not give Defendant notice that he was claiming discrimination based on the failure to promote, and Plaintiff's claim for failure to promote under Title VII must be dismissed.

It is important to note that while EEOC charges are required for claims under Title VII, 42 U.S.C. § 1981 was specifically designed to remedy discrimination separate from Title VII, and a claimant is "not required to include his Section 1981 claims in his EEOC charges." *See Brown v. City of New York*, 869 F.Supp. 158, 170 (S.D.N.Y. 1994); *Foster v. Gueory*, 655 F.2d 1319, 1323 (D.C. Cir. 1981). This affirmative defense does not affect Plaintiff's claim for failure to promote under 42 U.S.C. § 1981, and this claim must be analyzed under the framework established by *McDonnell Douglas Corp.* 411 U.S. at 803.

**2.    Plaintiff's *Prima Facie* Case**

In order to establish a *prima facie* claim for the failure to promote, a Plaintiff "must show "(1) [he] is a member of a protected group; (2) [he] was qualified and applied for a promotion to

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

an available position; (3) [he] was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 936 (8th Cir. 2007) (*quoting Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996)).

Plaintiff has failed to establish a *prima facie* claim. Plaintiff has introduced no evidence that he "was qualified and applied for a promotion to an available position." *Id.* Plaintiff even admitted Defendant's statement of fact that "Albert Lockridge did not apply for a Supervisor's position on the Renovations Crew." However, the fact that Plaintiff never applied for a promotion will "not bar a plaintiff from establishing a prima facie claim, as long as the plaintiff 'made every reasonable attempt to convey his interest in the job to the employer.'" *Chambers v. Wynne Sch. Dist.*, 909 F.2d 1214 (8th Cir. 1990) (internal citation omitted). This exception does not salvage Plaintiff's claim as Plaintiff has introduced no evidence of any attempt he made to convey his interest in a supervisory position. There is simply no evidence upon which "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In addition to failing to satisfy the second element of the *prima facie* case for failure to promote, Plaintiff has also failed to satisfy the fourth element. Mr. Peoples became the Renovation Crew supervisor on December 31, 2004. Mr. Peoples is an African American. For the fourth element of Plaintiff's *prima facie* claim to be satisfied, Plaintiff must show that an employee who is "not part of the protected group" was promoted instead. *Allen*, 475 F.3d at 936. The only person who was promoted to the supervisor position on the Renovations Crew was a member of the protected group, and this element is not satisfied.

Plaintiff also asserts a claim for failure to promote based upon his non-selection for the CARE team. Even assuming that positions on the CARE team, which did not entail pay raises or supervisory duties, qualifies as a promotion, Plaintiff's claim still fails. Plaintiff admits that

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

African-Americans were selected to serve on the CARE team. Accordingly, Plaintiff cannot satisfy the fourth element of the *prima facie* claim as individuals who were members of the protected group received this alleged promotion. *See Allen*, 475 F.3d at 936.

Plaintiff has failed to establish a *prima facie* claim for both his allegation of failure to promote and his allegation regarding his non-selection for the hotel's CARE team. As a *prima facie* claim has not been established, the burden shifting analysis detailed by the Supreme Court stops, and Defendant is entitled to summary judgment. *See McDonnell Douglas Corp.*, 411 U.S. at 803.

**B.    WRONGFUL DISCHARGE**

**1.    Exhaustion of Administrative Remedies**

Prior to filing a lawsuit under Title VII, a Plaintiff is required to exhaust administrative remedies. *See Miles*, 481 F.3d at 1107. The "failure to exhaust administrative remedies is an affirmative defense that a defendant must prove." *Id.* Defendant asks the Court to dismiss Plaintiff's claim under Title VII for wrongful discharge, asserting that Plaintiff did not exhaust his EEOC administrative remedies for this claim as he has not received a right to sue notice regarding his second EEOC charge. The receipt of a right to sue letter is a statutory "prerequisite to suit in federal court" similar to "a statute of limitations." *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

Plaintiff has submitted to the Court a right to sue notice regarding Plaintiff's second EEOC charge. This notice is dated January 31, 2008. The Eighth Circuit has held that "in the context of an employee suing a private employer, that the failure to obtain a right-to-sue letter prior to the commencement of a suit is a curable defect, cured by the subsequent receipt of a right-to-sue letter." *Ruth v. West*, 1997 WL 311591, *1 (8th Cir. 1997) (*citing Jones v.*

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

*American State Bank*, 857 F.2d 494, 499-500 (8th Cir. 1988)). As Plaintiff has now received a right to sue letter, this defect has been cured, and Defendant may not rely upon this affirmative defense.

**2.    Plaintiff's *Prima Facie* Case**

To establish a *prima facie* claim for discriminatory discharge, Plaintiff "must show: (1) [he] was a member of a protected class; (2) [he] was qualified for the position; (3) [he] suffered an adverse employment action; and (4) there is evidence that gives rise to an inference of discrimination." *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 913 (8th Cir. 2006).

Plaintiff has failed to establish a *prima facie* case of discrimination based upon race because he has not presented sufficient evidence to establish the second element of his *prima facie* case. Plaintiff's employment was terminated due to his attitude of dissatisfaction and ongoing discontent with the hotel. Improper workplace behavior, such as the inability to get along with coworkers, a negative attitude, or a poor work ethic can prevent a plaintiff from establishing the second element of their *prima facie* case. *See Etukakpan v. St. Jude Medical, Inc.*, 13 F.App'x 477, 480 (8th Cir. 2001); *Murphy v. University of Cincinnati*, 72 F.App'x 288, 292 (6th Cir. 2003). Plaintiff's September 22, 2006 letter demonstrates his discontent with his employment and conveys a negative attitude. Plaintiff worked in the hospitality industry where a positive attitude is absolutely a job qualification. The attitude expressed in the September 22, 2006 letter demonstrates that Plaintiff was not qualified for his position.[4]

---

[4] Plaintiff contends that he did not have to interact with guests in his position with the Building Services Department, however, he has provided the Court with evidence indicating that he did come into contact with guests. For example, a hotel employee in the Housekeeping Department stated that Plaintiff went "above and beyond for guest[s]."

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Even assuming that Plaintiff was able to establish his *prima facie* case, his claim would still fail. An employee's bad attitude is a legitimate, non-discriminatory reason for discharge. As Defendant has established a legitimate reason for Plaintiff's discharge, the burden shifts back to Plaintiff to show that the nondiscriminatory reason offered by the employer is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804. Plaintiff has the ultimate burden "to produce evidence sufficient to create a genuine issue of material fact regarding whether [the employer's] proffered nondiscriminatory reason is a pretext for discrimination." *Rodgers*, 417 F.3d at 853.

Plaintiff has not satisfied this burden. While Plaintiff disputes Defendant's proffered non-discriminatory reason for the termination, Plaintiff has not "shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original). Plaintiff has simply not introduced evidence of pretext that rebuts Defendant's legitimate, non-discriminatory reason for discharge. Defendant's Motion for Summary Judgment will be grated on Plaintiff's claim of wrongful discharge.

### C. RETALIATORY DISCHARGE

#### 1. Exhaustion of Administrative Remedies

As discussed above, Defendant asks the Court to dismiss Plaintiff's claim under Title VII for retaliatory discharge, asserting that Plaintiff did not exhaust his EEOC administrative remedies for this claim as he has not received a right to sue notice regarding his second EEOC charge. The receipt of a right to sue letter is a statutory "prerequisite to suit in federal court" similar to "a statute of limitations." *See Zipes*, 455 U.S. at 393.

Plaintiff had not received a right to sue letter when he filed this lawsuit on November 14, 2006, however, Plaintiff received a right to sue letter for his second EEOC charge on January 31, 2008. "[T]he failure to obtain a right-to-sue letter prior to the commencement of a suit is a

12

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

curable defect, cured by the subsequent receipt of a right-to-sue letter." *Ruth*, 1997 WL 311591 at *1 (*citing Jones*, 857 F.2d at 499-500). As Plaintiff has now received a right to sue letter, this defect has been cured, and Defendant may not rely upon this affirmative defense.

**2.     Plaintiff's *Prima Facie* Case**

Plaintiff alleges three bases for his retaliation claim; that he was fired in retaliation for his EEOC charge, that he was fired in retaliation for his September 22, 2006 letter, and that he was denied the opportunity to return to light duty work following his FMLA leave in retaliation for his EEOC complaint.

The general rule is that "'[a]t-will' employees can be terminated at any time without cause." *Cruesoe v. MERS/Missouri Goodwill Industries*, 2006 WL 2917363, *11 (E.D. Mo. October 11, 2006). However, an exception to this rule exists as an employer may not "discriminate against an employee for engaging in protected action." *Green*, 459 F.3d 903, 913-14. A plaintiff has established a *prima facie* case for retaliation if they "show (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Green*, 459 F.3d at 914.

*a.     Fired in Retaliation for EEOC Complaint*

Plaintiff has demonstrated the first two elements for this claim. The filing of an EEOC charge "constitutes a protected activity." *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006). Plaintiff engaged in a protected activity when he filed his EEOC charge and his termination was certainly an adverse employment action. While the first two elements have been satisfied, Plaintiff has failed to introduce evidence upon which "a reasonable jury could return a verdict for the nonmoving party" on the third element of this *prima facie* claim. *Anderson*, 477 U.S. at 248.

13

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Plaintiff was fired by Eric Walters, the General Manager of the Adam's Mark Hotel. Eric Walters stated in his deposition that he did not know of Plaintiff's EEOC charge at the time Plaintiff was fired, and only learned of the charge over a year after Plaintiff's termination. For the causation element to be satisfied, "decision-makers must have awareness of the protected activity." *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006) (*citing Wilson v. Northcutt*, 441 F.3d 586, 592-93 (8th Cir. 2006). Plaintiff has not introduced any evidence that creates a genuine issue of material fact over whether Eric Walters had knowledge of this charge prior to Plaintiff's termination.

### b. *Fired in Retaliation for the September 22, 2006 Letter*

Plaintiff's claim of retaliatory discharge based on the September 22, 2006 letter fails. As discussed above, Plaintiff establishes a *prima facie* case for retaliation if he shows "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Green*, 459 F.3d at 914.

It is not clear whether Plaintiff's September 22, 2006 letter constitutes a protected activity. "[A]n informal . . . complaint about, or in opposition to, an employer's practice or act . . .[may constitute a protected activity] if the employee reasonably believes such an act to be in violation of the statute in question." *Jeseritz v. Potter*, 282 F.3d 542, 548 (8th Cir. 2002). However, "not every complaint about conditions in the workplace, legitimate or otherwise, constitutes a protected activity; retaliation in response to an activity that is not protected does not support a retaliation claim." 45A Am. Jur.2D Job Discrimination § 242. A complaint about "actions outside the ambit of an employment practice is unprotected by Title VII." *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007). Many of the things about which Plaintiff complains in his letter are not employment practices, and are not protected by Title VII.

14

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Additionally, "[t]he Eighth Circuit has held that a plaintiff failed to establish the first element where the plaintiff's behavior was bizarre or disruptive to the operation of the defendant's business." *Moore v. Cingular Wireless*, 2007 WL 2828768, *5 (E.D. Ark. September 27, 2007) (*quoting Jackson v. St. Joseph Hospital*, 840 F.2d 1387, 1390 (8th Cir. 1988). Plaintiff's letter, complaining of events that occurred years previously certainly appears bizarre, and is probably an unprotected activity. However, Plaintiff's claim fails even if the Court assumes that Plaintiff can establish the elements of a *prima facie* case.

Defendant has shown a nondiscriminatory reason for Plaintiff's termination. Defendant asserts that Plaintiff was discharged because he had a negative attitude and Eric Walters worried that Plaintiff would negatively influence guests' perceptions of the hotel or negatively influence the attitudes and comradery of other hotel employees. Plaintiff demonstrated this bad attitude in his September 22, 2006 letter, in which he complained about a wide variety of issues, many of which had not been relevant for years. Plaintiff even provided this letter to the media, city officials, senators, congressmen, and others.

Defendant's proffered non-discriminatory reason for Plaintiff's termination is a legitimate, non-discriminatory reason for a discharge. A termination based on legitimate, non-discriminatory reasons will bar recovery under 42 U.S.C. § 1981 and Title VII, irrespective of whether Plaintiff engaged in protected activity.

Plaintiff has not presented sufficient evidence which would enable a jury to find that the reasons given for firing Plaintiff were pretextual. *Anderson*, 477 U.S. at 249. "Title VII protection from retaliation for filing a complaint does not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers." *Jackson v. St. Joseph State Hosp.*, 840 F.2d 1387, 1391 (8th

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Cir. 1988). While Plaintiff disputes Defendant's proffered non-discriminatory reason for the termination, Plaintiff has not "shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Center*, 509 U.S. at 515. Plaintiff has simply not introduced evidence of pretext that rebuts Defendant's legitimate, non-discriminatory reason for discharge.

### c. *Denied the Opportunity to Return to Light Duty Work Following FMLA Leave*

This claim fails for the same reason Plaintiff's claim that he was retaliated against for filing his EEOC complaint failed. While the first two elements have been satisfied, Plaintiff has failed to introduce evidence upon which "a reasonable jury could return a verdict for the nonmoving party" on the third element of this claim. *Anderson*, 477 U.S. at 248.

Plaintiff has not introduced any evidence that Tom Cole, the Director of Personnel, knew of Plaintiff's EEOC complaint when he denied Plaintiff's request for light duty work. For the causation element to be satisfied, "decision-makers must have awareness of the protected activity." *Robinson v. Potter*, 453 F.3d 990, 994 (8th Cir. 2006) (*citing Wilson v. Northcutt*, 441 F.3d 586, 592-93 (8th Cir. 2006)). Plaintiff has not introduced any evidence that creates a genuine issue of material fact over whether Tom Cole had knowledge of Plaintiff's EEOC complaint, and Defendant's Motion for Summary Judgment must be granted.

## IV. CONCLUSION

Plaintiff has brought claims under both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, alleging that he was denied a promotion on the basis of his race, that he was discharged because of his race, and that he was retaliated against for making complaints of racial discrimination. For all of his claims, Plaintiff has either failed to establish a *prima facie* case or has failed to show that Defendant's proffered non-discriminatory reason for his termination is pretextual. Defendant is entitled to summary judgment on all of Plaintiff's claims.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Accordingly,

**IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment [doc. #34] is **GRANTED.**

Dated this 29th Day of February, 2008.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com